

FILED

JAN 2 7 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                    )
                                         )
DAVID E. ROBINETTE and                   )    Case No. 02-93549-D-11
MARGIE L ROBINETTE,                      )
                                         )
            Debtors.                     )
_____  )
                                         )
DAVID E. ROBINETTE and                   )    Adv. Pro. No. 04-9161
MARGIE L. ROBINETTE,                     )
                                         )
            Plaintiffs,                  )
v.                                       )
                                         )
WESTERN ASSET RECOVERY, INC.             )    Continued Trial Date:
and GEORGE ROSE,                         )    DATE: December 5, 2005
                                         )    TIME: 9:30 a.m.
            Defendants.                   )    DEPT: D
_____  )

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On December 5, 2005 the above-entitled matter came on for

trial on David E. Robinette and Margie L. Robinette's

complaint for declaratory relief, breach of contract and

negligent interference with contractual relations as well as

the consolidated motions of George Rose and Western Asset

Recovery, Inc., for approval and allowance of payment of

administrative claim.  Malcolm D. Gross appeared on behalf of

David and Marjie Robinette ("Plaintiffs") and Wylie P. Cashman

appeared on behalf of George Rose and Western Asset Recovery,

Inc. ("Defendants").  The court having heard the testimony of

1　the witnesses and the argument of counsel and having reviewed
2　the documentary evidence, makes the following findings of fact
3　and conclusions of law:

### FINDINGS OF FACT

5　　　To the extent any finding of fact set forth herein is a
6　conclusion of law, it is hereby incorporated into the
7　Conclusions of Law section as if set forth in full.

8　　　1.　David E. Robinette ("Robinette") and George Rose
9　("Rose") testified at trial.　The court finds that Robinette's
10　recall was at times faulty in that he had difficulty recalling
11　conversations and identifying certain correspondence and/or
12　documents that he submitted as an exhibit.　The court also
13　finds that the testimony of Rose was credible and his recall
14　generally good.

15　　　2.　Plaintiffs filed a petition for relief under Chapter
16　11 of Title 11 of the United States Code on September 23,
17　2002.　At all times relevant Plaintiffs administered their
18　Chapter 11 as debtors-in-possession or revested Chapter 11
19　debtors.

20　　　3.　In or about March 2003 Plaintiffs were the owners of
21　two parcels of real property consisting of approximately 848
22　+/- acres located on Tim Bell Road, Waterford, Stanislaus
23　County, California known as APN Nos. 008-01-12, 008-01-20,
24　015-02-07, and 015-02-08 (this property shall be referred to
25　as the "Development Property").

26　　　4.　Rose is the President and owner of Western Asset
27　Recovery, Inc. ("WAR").

28　/ / /

5.   Rose, on behalf of WAR and the Plaintiffs entered into discussions regarding having Defendants develop the Development Property.   These discussions occurred both prior and subsequent to the Plaintiffs filing their Chapter 11 petition.   Ultimately, these discussions resulted in the parties entering into a written agreement in March 2003.   The title of the written agreement is "Real Property Development Agreement" (the "Development Agreement").

6.   Prior to signing the Development Agreement it was reviewed by Plaintiffs' counsel and revisions were made at the request of Plaintiffs' counsel.

7.   The Development Agreement provides for the Defendants to develop, and Plaintiffs to sell, the Development Property. (Exhibit F)

8.   The Development Agreement provides for payment of a development fee to Defendants for their services, calculated as six percent (6%) of the gross sales price of each parcel or lot sold.   The Development Agreement set this development fee for Defendants' services for the entire Development Property. (Exhibit F)

9.   Under the Development Agreement, payment of Defendants' development fee was to be made at the close of escrow on the sale of each lot or parcel.   (Exhibit F)

10.   The Development Agreement provided for Defendants to render services over 24 months after approval of the Development Agreement by the court (through April 25, 2005). (Exhibit F)

/ / /

3

11.   The Development Agreement provides that Defendants would advance costs for the process of obtaining parcel maps for the Development Property, subject to reimbursement by Plaintiffs.   (Exhibit F)

12.   Defendants had no obligation to advance costs for infrastructure improvements in the development of the Development Property.   (Exhibit F)

13.   The Development Agreement contains an attorneys' fees provision providing that in the event of a dispute the prevailing party is allowed to recover reasonable attorneys' fees.   (Exhibit F)

14.   Although the Development Agreement provided for payment to Defendants at the close of escrow on the sale of each lot, Defendants and Plaintiffs orally agreed that payment of Defendants' development fee could be deferred until all secured creditors had been paid.

15.   Sometime in or about late March or early April 2003, Plaintiffs filed an Application for Employment of General Contractor for Debtor in Possession (this was Plaintiffs' application to employ Defendants) and a hearing on the Application was held on April 23, 2003.   On April 25, 2003, after hearing, the Court entered an order stating the terms for Plaintiffs' employment of the Defendants (the "Employment Order").

16.   The Employment Order provides for the appointment of Defendants as General Contractor for the Debtors' (Plaintiffs') estate subject to a number of conditions.   One of the conditions is that no fees or costs are to be paid to

1  the Defendants except by applications to the Court pursuant to
2  11 U.S.C. § 330(a).  The Employment Order further indicates
3  that the Court was not approving at that time the payment of
4  any fees or costs to Defendants.  The Employment Order also
5  requires that the Development Agreement be modified to
6  "reflect the restrictions of the order".  (Exhibit G)

7      17.    Donna Munian ("Muniain") was employed by Plaintiffs
8  and their bankruptcy estate as a real estate broker to market
9  and sell the Development Property.  After April 2003 Rose
10  worked with Muniain at various times to establish an estimated
11  time line for the development and sale of the Development
12  Property.  Rose and Muniain also provided information to the
13  Plaintiffs for their Disclosure Statement, Amended Disclosure
14  Statement and Plan of Reorganization.  This information
15  included their input in regard to the parcel map process for
16  the Development Property and opinions of value as to the
17  proposed parcels once developed.

18      18.    The valuations provided by Muniain and Rose were
19  provided to Robinette and his counsel and ultimately adjusted
20  values were used by Plaintiffs in their Amended Disclosure
21  Statement filed July 7, 2003.  (Exhibit B)  These adjusted
22  values were derived at after discussion and input from
23  Robinette and his counsel.  More specifically, Defendants
24  initially provided Robinette and his counsel a draft letter
25  indicating proposed values for certain parcels and these
26  values were increased at Plaintiffs' request. (Exhibits K and
27  L)
28  / / /

19.   The Plaintiffs' Amended Disclosure Statement filed
July 7, 2003 was eventually approved by the Court and
Plaintiffs' Amended Plan of Reorganization dated July 7, 2003
("Plan") was confirmed at hearing on September 15, 2003.  The
order confirming the Plan was signed on September 17, 2003
(the "Confirmation Order").  (Exhibit VV)

20.   Neither the Plan nor the Confirmation Order
expressly dealt with the Development Agreement.  (Exhibit VV)

21.   The Plan requires all the Development Property be
developed and sold by January 31, 2005.  (Exhibit VV)

22.   Defendants caused the processing of parcel map
applications and obtained approval of two parcel maps.

23.   All parcels set forth on each parcel map have legal
access to irrigation water and access for ingress and egress.

24.   Prior to the processing of the parcel maps for
portions of the Development Property, neither the Plaintiffs
nor their agents informed Defendants, or their agents, of a
desire to have all the property lines on the newly created
parcels go to the center of existing roadways.

25.   Prior to the processing of the parcel maps for
portions of the Development Property, Plaintiffs never
specifically informed Defendants, or their agents, of their
desire as to locations of pumping stations.

26.   Robinette took home for review copies of each parcel
map before he signed each parcel map and before they were
recorded.

27.   Robinette was informed by Rose that a draft of the
third parcel map was available at WAR's office for his review.

28.   Even though Defendants had commenced the process of procuring a third parcel map, in September 2004 Robinette instructed Defendants not to process any further with work on the third parcel map or under the Development Agreement. (Exhibit KK)

29.   In June and again in July 2004 Plaintiffs' counsel represented to Defendants that Defendants' fees pursuant to the Development Agreement would be paid and likely would not be objected to because all creditors would be paid in full. (Exhibits W and Y)

30.   Plaintiffs did not object to the configuration of the parcels set forth on either parcel map prior to the recordation of either parcel map.  Plaintiffs objected only after there was correspondence with Plaintiffs' counsel regarding payment of Defendants' fees/commission.

31.   More specifically, on September 3, 2004 Robinette sent a letter to Defendants indicating that they were to take no further action on his behalf and, in particular, to take no further action in regard to processing the third parcel map. (Exhibit KK)

32.   David Harris ("Harris") testified as an expert witness on behalf of the Defendants.  Harris does business under the name "Aspen Survey Company".  The Court finds that the testimony of Harris was credible and his recall good. Further, the Court finds that Harris' credentials and qualifications allowed him to provide expert testimony in regard to industry standards for surveying real property and related services.

33.　The Court finds that all work performed by Defendants, through Harris, dba Aspen Survey Company, including, but not limited to assistance in the preparation of parcel maps, the surveying of property and the staking of property corners, and the location and placement of pumping stations, was done consistent with industry standards.

34.　The staking of the property corners of each parcel set forth in each parcel map was in conformity with industry standards.

35.　Defendants caused no delay in processing the approval of the "White Report."

36.　Plaintiffs have not proved that any act of the Defendants caused any diminution in value of any of the parcels set forth in either of the parcel maps or the Development Property generally.

37.　As a result of Defendants' service under the Development Agreement, Plaintiffs were able to perform their Plan and pay, or provide for the payment of, all creditors and administrative claimants, with a substantial amount remaining for Plaintiffs.

38.　All of the Development Property has been sold except a 137-acre parcel ("the Remaining Parcel").

39.　The Remaining Parcel is likely not to be sold at this time, because of the unilateral decision of the Plaintiffs.

40.　The Plaintiffs do not have to sell the Remaining Parcel to fund the Plan because they were able to sell a

/ / /

8

1  sufficient amount of real property to satisfy all of the
2  claims, as well as all administrative claims.

3      41.  Escrow closed on Parcels 2 and 3 of the first parcel
4  map on March 1, 2004 for a combined sales price for the two
5  parcels of $575,000.00.

6      42.  WAR is entitled to a development fee of 6% of the
7  sales price for Parcels 2 and 3 of the first parcel map.
8  Thus, WAR's development fee for this sale is $34,500.00 (6% x
9  $575,000.00); this development fee has not been paid to date.

10     43.  Escrow closed on Parcel 1 of the first parcel map on
11 April 13, 2004 for a sales price of $300,000.00.

12     44.  WAR is entitled to a development fee of 6% of the
13 sales price for Parcel 1 of the first parcel map.  Thus, WAR's
14 development fee for this sale is $18,000.00 (6% x
15 $300,000.00); this development fee has not been paid to date.

16     45.  Escrow closed on Parcel 4 of the first parcel map on
17 June 10, 2004 for a sales price of $450,000.00

18     46.  WAR is entitled to a development fee of 6% of the
19 sales price for Parcel 4 of the first parcel map.  Thus, WAR's
20 development fee for this sale is $27,000.00 (6% x
21 $450,000.00); this development fee has not been paid to date.

22     47.  Escrow closed on Parcels 3, 4 and 5 of the second
23 parcel map on September 8, 2004 for a combined sales price of
24 $870,000.00.

25     48.  WAR is entitled to a development fee of 6% of the
26 sales price for Parcels 3, 4 and 5 of the second parcel map.
27 Thus, WAR's development fee for this sale is $52,200.00 (6% x
28 $870,000.00); this development fee has not been paid to date.

49.  Escrow closed on Parcel 2 of the second parcel map on October 26, 2004 for a sales price of $340,000.00.

50.  WAR is entitled to a development fee of 6% of the sales price for Parcel 2 of the second parcel map.  Thus, WAR's development fee for this sale is $20,400.00 (6% x $340,000.00); this development fee has not been paid to date.

51.  Escrow closed on what has been referred to as the "Remainder Parcel" of the second parcel map on February 24, 2005 for a sales price of $1,700,000.00.

52.  WAR is entitled to a development fee of 6% of the sales price for the "Remainder Parcel" of the second parcel map.  Thus, WAR's development fee for this sale is $102,000.00 (6% x $1,700,000.00); this development fee has not been paid to date.

53.  The Remaining Parcel, which parcel though previously listed is not currently listed for sale by Plaintiffs.

54.  The fair market value of the Remaining Parcel is at least $1,150,000.

55.  Plaintiffs have chosen not to sell the Remaining Parcel although they are required to do so under the Development Agreement.

**CONCLUSIONS OF LAW**

To the extent any conclusion of law set forth herein is a finding of fact, it is hereby incorporated into the Findings of Fact section as if set forth in full.

56.  The trial was a trial of not only Adversary Proceeding 04-9161, but also of the consolidated motions of Defendants for allowance of administrative claim.

57. Robinette's letter of September 3, 2003 (Exhibit KK) constitutes Plaintiffs' unilateral termination of the Development Agreement at that time. Plaintiffs' unilateral termination of the Development Agreement by Robinette's letter of September 3, 2004 was without just cause and a breach of the Development Agreement.

58. Plaintiffs have shown no breach of the Development Agreement by Defendants.

59. Notwithstanding the terms of the Development Agreement, the Employment Order requires that no fees or costs are to be paid to the Defendants except by application to the court pursuant to 11 U.S.C. § 330 (a). The Employment Order further indicates that it was not approving the payment of fees or costs to the Defendants at that time.

60. To the extent there is a conflict between the Employment Order and the Development Agreement, the Employment Order controls and takes priority. Thus, Defendants' compensation is subject to 11 U.S.C. § 330.

61. The Development Agreement binds the Plaintiffs, both as debtors and debtors-in-possession. Further, the Development Agreement is binding on the Plaintiffs' Chapter 11 estate.

62. Nothing in the Plan restructures the Development Agreement or impairs the parties' rights thereunder.

63. Under the Plan and Confirmation Order a claim or interest that is disputed, is not an "allowed claim" until there has been a final order or judgment allowing the claim. (Exhibit VV)

11

64.   Defendants' claim against Plaintiffs and their estate is disputed and  will not be an "allowed claim" until it is determined through a final judgment or order of the court.

65.   As a result of Plaintiffs' decision not to sell the Remaining Parcel, WAR has been damaged in an amount equal to 6% of the fair market value of the Remaining Parcel.  The Remaining Parcel has a value of at least $1,150,000 and as such WAR's damages are 6% of this amount, that being $69,000 (6% x $1,150,000).

66.   WAR is entitled to the 6% development fee set forth in paragraphs 41 through 52 above as an allowed administrative claim plus the damages for breach of the Development Agreement referenced in paragraph 65.

67.   Thus, the court allows WAR an administrative claim in the amount of $323,100.  Pursuant to the terms of the Plan and Confirmation Order this administrative claim shall accrue interest at 7% per annum upon entry of judgment allowing same becoming final.

68.   In addition, WAR may file a motion for its attorneys' fees pursuant to paragraph 16 of the Development Agreement.

69.   Judgment and an Order will be entered accordingly.


Dated: *1-27-06*

_Robert S. Bardwil_
ROBERT S. BARDWIL
UNITED STATES BANKRUPTCY JUDGE

(Robinette 9161) FFCL. 122705.wpd

12

1

**CERTIFICATE OF MAILING**

2     I, Andrea Lovgren, in the performance of my duties as
assistant to the Honorable Robert S. Bardwil, mailed by ordinary
3  mail a true copy of the attached document to each of the parties
listed below:

4

Attorney for Plaintiff

5

Malcolm Gross
6  Law Offices of Herman Meyer
214 East "F" Street, Suite 203
7  Oakdale, CA 95361

8  Attorney for Defendant

9  Wylie Cashman
P.O. Box 1100
10  Modesto, CA 95353-1100

11  Michael Hertz
Lang Richert & Patch
12  P.O. Box 40012
Fresno, CA 93755

13

14

DATE: January 27, 2006
15

16                        Andrea Lovgren

17

18

19

20

21

22

23

24

25

26

27

28